IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN M. O'BOYLE and PAMELA S. O'BOYLE,**<br><br>v.<br><br>**PROGRESSIVE PREFERRED INSURANCE COMPANY.** | **CIVIL ACTION**<br><br>**NO. 22-4948** |

**MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                          **September 18, 2023**

Defendant Progressive Preferred Insurance Co. ("Progressive") seeks summary judgment in this case arising from a dispute over insurance coverage. ECF No. 40. As discussed in more detail below, there do not appear to be any disputes about the material facts of the case.

**I.      RELEVANT UNDISPUTED FACTS[1]**

Plaintiff John M. O'Boyle was injured in an auto accident with a tortfeasor while he was operating a Jeep Wrangler that he owned with his wife, Plaintiff Pamela S. O'Boyle. (Def.'s SUF ¶ 1; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 1.)[2] Plaintiffs' Jeep Wrangler was insured by an auto insurance policy issued by Goodville Mutual Insurance Company ("Goodville") that, following the accident, provided the O'Boyles with $250,000 in underinsured motorist ("UIM") coverage.[3] (Def.'s SUF ¶¶ 2-3; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶¶ 2-3.) Plaintiffs also recovered $15,000

---

[1] Unless otherwise indicated, all facts, taken in the light most favorable to Plaintiffs, are derived from Defendant's Statement of Undisputed Facts (ECF 40) ("Def.'s SUF") and Plaintiffs' Response to Defendant's Motion for Summary Judgment (ECF 43) ("Pl.'s Resp. to Def.'s Mot. Summ. J.").

[2] Plaintiff Pamela S. O'Boyle has asserted a loss of consortium claim relative to her husband's alleged injuries. See Plaintiffs' Complaint, ¶¶ 1, 17.

[3] Uninsured motorist ("UM") coverage applies "when an insured suffers injury or damages caused by a third-party tortfeasor who is uninsured." See Gallagher v. GEICO Indem. Co., 650 Pa. 600, 201 A.3d 131, 132 n.1 (2019). UIM coverage applies when "a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." Id.

1

from the Allstate policy of the tortfeasor. (Def.'s SUF ¶ 3; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 3.)

At the time of the accident, John O'Boyle was the first named insured of a motorcycle policy issued by Defendant Progressive that insured a 2006 Triumph Speedmaster motorcycle. (Def.'s SUF ¶ 4; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 4.) The Progressive policy insured only that one motorcycle. (Def.'s SUF ¶ 6; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 6.) Asserting that the Goodville and State Farm payouts were insufficient to compensate him fully, the O'Boyles sought to recover additional compensation for O'Boyle's injuries under the Progressive policy. The declaration page for the Progressive policy provides underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. (Def.'s SUF ¶ 8; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 8.)

At the time of the accident, O'Boyle was operating the Jeep Wrangler, which was owned by Plaintiffs and not listed as an insured vehicle under the Progressive policy. (Def.'s SUF ¶ 9; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 9.) John O'Boyle signed a UIM coverage stacking waiver under the Progressive policy.[4] It stated:

> By signing this waiver, I am rejecting stacking limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

(Def.'s Mot. Summ. J. ¶ 19; Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 19.)

Progressive has denied Plaintiffs' claim for UIM coverage based on this waiver and the household vehicle exclusion in Progressive's policy, discussed below.

---

[4] "Stacking" refers to "the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to the insured." Gallagher, 201 A.3d at 132 n.1.

2

## II. PROCEDURAL HISTORY

Plaintiffs filed suit against Defendant, alleging that Progressive improperly denied their claim for UIM coverage. Plaintiffs filed their Complaint on December 13, 2022, bringing a claim for breach of contract and seeking compensatory damages and cost of suit.[5] ECF No. 1. Defendant filed an Answer and Separate Defenses to Plaintiffs' Complaint. ECF No. 6. Defendant then filed a Motion for Judgment on the Pleadings. ECF No. 14. Plaintiffs filed a Response (ECF No. 19) and then Defendant filed a Reply (ECF No. 20). This Court denied Defendant's Motion without prejudice, concluding that:

> There are numerous issues of fact that must be the subject of discovery, which are relevant to the central issue of Defendant's motion, that is, whether Plaintiffs made a knowing waiver of stacking under the policy in question consistent with Pennsylvania law. Further warranting denial is the alleged ambiguity of the exclusion terms under the policy, as evinced through the parties' arguments and the Court's comments during oral argument of the Motion.

ECF No. 25.

### a. Summary Judgment Briefing

Defendant moved for summary judgment. Plaintiffs filed a Response to Defendant's Motion for Summary Judgment containing additional facts which they claim support denial of the motion. ECF No. 43. Plaintiffs did not submit an affidavit, as they are permitted to do under Rule 56, but they attached several exhibits to their response, including a letter from Progressive denying Plaintiffs' claim that the Progressive policy provides UIM coverage, excerpts from the deposition transcripts of Mr. O'Boyle and Progressive representative Marie Adrine, and policy language from the 2008 and 2009 Progressive policies. Defendant then filed a Reply in Support of its Motion for Summary Judgment that addresses these additional facts and a Reply Memorandum of Law in

---

[5] Plaintiffs also sought attorney fees, but the parties then stipulated and agreed to strike any claims against Progressive for attorney's fees, without prejudice. ECF No. 9.

Support of Defendant's Motion for Summary Judgment. ECF No. 44. The additional facts raised by Plaintiff do not create a genuine dispute of material fact.

Defendant asks the Court to find that Plaintiffs knowingly waived stacking and that Plaintiffs' claim should be dismissed pursuant to the household vehicle exclusion, described below.

### III. PARTIES' CONTENTIONS

The Motor Vehicle Financial Responsibility Law ("MVFRL") governs automobile insurance coverage in Pennsylvania. 75 Pa. Con. Stat.§§ 1701-99.7. Section 1733 of the MVFRL governs the priority of UIM recovery. Under Section 1733, the "policy covering a motor vehicle occupied by the injured person at the time of the accident" is the First priority policy. 75 Pa. Con. Stat. § 1733(a)(1). "If the injuries exceed the coverage of the First Priority UIM policy, then the injured person may seek recovery under a 'policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured,'" which is the Second priority policy. Generette v. Donegal Mut. Ins. Co., 598 Pa. 505, 957 A.2d 1180, 1190 (2008); citing 75 Pa. Con. Stat. § 1733(a)(2). The Progressive policy at-issue here includes language reflecting the framework set forth in Section 1733 for first and second priority recovery:

> If there is other applicable similar insurance available, the following priorities of recovery apply:
>
> First  The uninsured or underinsured motorist coverage applicable to the motor vehicle the insured person was occupying at the time of the accident.
>
> Second  Any other policy affording uninsured or underinsured motorist coverage to the insured person.

(Ex. A to Compl. at 18.)

The Progressive policy is in the Second priority since Goodville, which provided UIM coverage for the motor vehicle that O'Boyle was driving at the time of the accident, paid its UIM

4

policy limits in the First priority. (Pl.'s Memo. at 10.)[6]  Plaintiffs claim that the Progressive policy allows for UIM benefits because the "limit of protection" clause in the 2009 Progressive policy refers to UIM coverage in the Second priority even when nonstacked coverage is selected, and therefore, the policy does not provide the insured a knowing waiver of inter-policy stacked coverage.  (Pl.'s Memo. at 9.)  The 2009 Progressive policy "limit of protection" clause states, in relevant part:

> If nonstacked coverage is shown on the declarations page and this policy is in the Second priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one motor vehicle under any one policy in the Second priority.

(Ex. 4 to Pl.'s Opp. at 18.)

Plaintiffs point to evidence that Progressive changed the language of its policy between 2008 and 2009.  The 2008 policy, in contrast to the at-issue 2009 policy, features the following language in the "limit of protection" clause:

> If nonstacked coverage is shown on the declarations page, the following additional provisions apply:
> …
> When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one motor vehicle under any one policy.

(Ex. 3 to Pl.'s Opp. at 18.)

Plaintiffs argue that the former 2008 policy language clearly stated that there would be no UIM coverage in the Second priority if nonstacked coverage were selected and if there was recovery in the First priority.  (Pl.'s Memo. at 10.)  Plaintiffs assert that, unlike the 2008 policy, the 2009 policy, at issue in this case, misleads an insured to believe that even if he selected nonstacked coverage under the Progressive policy, he would still be able to recover UIM benefits

---

[6] Throughout, "Pl.'s Memo." refers to Plaintiff's Memorandum of Law in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment.

when Progressive is in the Second priority.  (Pl.'s Resp. to Def.'s Mot. Summ. J. at 6.)  Plaintiffs ask the Court to find that the "totality of the Progressive policy does not provide its insured with the necessary information to understand that coverage is being waived." (Pl.'s Memo. at 15.)

The Progressive policy also features a "household vehicle" exclusion.  The "household vehicle" exclusion provides:

> **EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY.  IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**
>
> Coverage under this Part III will not apply:
> 1. to **bodily injury** sustained by any person while using or **occupying**:…
>    b. a motor vehicle that is owned by or available for the regular use of **you** or a **relative**. This exclusion does not apply to a **covered motorcycle** that is insured under this Part III;…

(Ex. A to Compl. at 15.)

Plaintiffs argues that the household vehicle exclusion is unenforceable under the facts in this case because there was no valid stacking waiver and pursuant to the Pennsylvania Supreme Court's holdings in <u>Gallagher</u> and <u>Donovan</u>, discussed below.

Progressive counters that Progressive's UIM coverage is barred by the stacking waiver signed by O'Boyle.  (Def.'s Memo. at 16.) [7]  Progressive argues that the "limit of protection" clause addresses the obligation for Progressive to provide UIM coverage when coverage is not otherwise excluded.  Progressive argues that this clause is not even considered here because coverage is excluded under the "household vehicle" exclusion, and even if there were coverage, the "limit of protection" clause does not grant coverage here because (1) there was first level of priority UIM coverage from Goodville, (2) a waiver of stacked coverage for a cost savings was

---

[7] Throughout, "Def.'s Memo." refers to Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment.

6

executed, and (3) there is no additional second level of priority coverage to potentially consider. (Def.'s Memo. at 19.)

IV. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

V.     **DISCUSSION**

a. **Knowing Waiver of Inter-Policy Stacking.**

The first issue is whether Plaintiffs knowingly waived inter-policy stacking. There are two types of stacking: (1) intra-policy stacking, where a single insured can stack coverage limits on multiple vehicles under a single insurance policy; and (2) inter-policy stacking, where a "single-vehicle" insured[8] can received stacked benefits if he/she is an insured under multiple separate insurance policies that provide stacked UIM benefits. See Gittelmacher v. Travelers Prop. Casualty Ins. Co., 2023 WL 2666065, at *3 (E.D.P.A. March 27, 2023) (Pratter, J.). Plaintiffs had only one motor vehicle, the motorcycle, insured under the Progressive policy. Thus, inter-policy stacking is at issue here.

Under Section 1738 of the MVFRL, when multiple vehicles are insured under one or more policies, UIM coverage is stacked by default. Erie Ins. Exch. v. Mione, 289 A.3d 524, 529 (Pa. 2023). However, the Pennsylvania Supreme Court has held that inter-policy stacking may be waived under Section 1738 of the MVFRL where that waiver is "knowing." Craley v. State Farm Fire & Cas. Co., 586 Pa. 484, 895 A.2d 530, 540-41 (2006). More specifically, an insured "may waive[ ] stacked coverage limits by signing a written waiver form, the text of which is dictated by Subsection 1738(d)." Mione, 289 A.3d at 529. The waiver language of Section 1738(d) of the MVFRL reads:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

---

[8] "Single-vehicle" insured refers to an insured who has just one vehicle insured under a given policy.

75 Pa. Con. Stat. § 1738(d). The Pennsylvania Supreme Court in <u>Craley</u> noted that the actual language of the Section 1738(d) waiver refers to intra-policy stacking as opposed to inter-policy stacking because of the mention of a single "policy" as opposed to multiple "policies." <u>Craley</u>, 895 A.2d at 541-42. The court nevertheless found that, when the policy in question covers only one vehicle, an insurer "could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on 'the policy'." <u>Id.</u> at 542. In the case where the policy covers only one vehicle, intra-policy stacking waiver cannot apply, and "the only interpretation fairly available to [Plaintiff] was that his premium-reducing waiver applied to inter-policy stacking." <u>Id.</u> Therefore, "the waiver is valid and enforceable under the facts of th[e] case." <u>Id.</u>

At the outset, this Court must examine the language of the stacking waiver form in the Progressive policy. This waiver conforms to the requirements of Section 1738(d) of the MVFRL; in fact, it is identical to the language of Section 1738(d). There is no dispute that O'Boyle signed the stacking waiver form. The situation in <u>Craley</u> applies to the present case. Under the facts of this case, like in <u>Craley</u>, the waiver form put Plaintiffs on clear notice that they were waiving inter-policy stacking and receiving a reduced premium as a result. O'Boyle signed the form stating, "I understand that my premiums will be reduced if I reject this coverage."[9] Like the Plaintiff in <u>Craley</u>, O'Boyle "could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle on 'the policy.'" Craley, 895 A.2d at 542. Thus, under <u>Craley</u>, the only

---

[9] The Pennsylvania Supreme Court has stated, "there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." <u>Hall v. Amica Mut. Ins. Co.</u>, 538 Pa. 337, 648 A.2d 755, 761 (1994).

reasonable interpretation of the Progressive policy is that O'Boyle's waiver applies to inter-policy stacking.

Plaintiffs argue that the Pennsylvania Supreme Court's decision in <u>Donovan v. State Farm Mut. Auto. Ins. Co.</u>, 256 A.3d 1145 (Pa. 2021) supports a finding that the waiver in this case was not "knowing." (Pl.'s Memo. at 14-15.) But <u>Donovan</u> affirmed the holding of <u>Craley</u> that the Section 1738(d) waiver form constitutes a valid waiver of inter-policy stacking *under a single vehicle policy*. <u>Donovan</u>, 256 A.3d at 1157. The <u>Donovan</u> court found that the Section 1738(d) waiver "does not provide the necessary knowing waiver of inter-policy stacked coverage" on multiple-vehicle policies, i.e., specifically "absent the single-vehicle situation in <u>Craley</u>." <u>Id.</u> Here, the Progressive policy insured a single motorcycle as opposed to multiple vehicles. Thus, there can be no confusion, per <u>Craley</u>, that Plaintiffs waived inter-policy stacking coverage.

Plaintiffs additionally argue that, notwithstanding the signed stacking waiver, they are entitled to recover under the Progressive policy because the "limit of protection" clause allows for stacking when the Progressive policy is in the second priority, or at a minimum, the provision is ambiguous and should be construed in favor of the insured. (Pl.'s Memo. at 13.) Progressive asserts that the "limit of protection clause" does not grant coverage here since coverage is excluded under the "household vehicle" exclusion, discussed below, and because Plaintiffs waived stacked coverage by signing the Section 1738(d) waiver form. (Def.'s Memo. at 19.)

Where the language of an insurance contract is "clear and unambiguous, a court is required to enforce that language." <u>Medical Protective Co. v. Watkins</u>, 198 F.3d 100, 103 (3d. Cir. 1999). "The courts have held, however, that if the policy provision is reasonably susceptible to more than one interpretation, it is ambiguous." <u>Id.</u> To determine whether a contract is ambiguous, "the court must examine the questionable term or language in the context of the entire policy and decide whether the contract is reasonably susceptible of different constructions

10

and capable of being understood in more than one sense." Id.  If there are two reasonable interpretations, one offered by the insured and one offered by the insurer, then the provision is ambiguous and should be construed in favor of the insured.  See id. at 103-104.  However, "[a] court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them."  St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981).  An insured typically "may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous."  West v. Lincoln Ben. Life Co., 509 F.3d 160, 169 (3d Cir. 2007).

The "limit of protection" policy language does not confer UIM stacking coverage when it has been validly waived through the statutory-compliant waiver form.  Here, the Progressive policy only insured one motorcycle.  O'Boyle signed the statutory waiver form "knowingly and voluntarily reject[ing] the stacked limits of coverage."  Under these circumstances, and in consideration of the household vehicle exclusion discussed below, there is no reasonable interpretation that inter-policy stacking was available to Plaintiffs.

      **b.  The Household Vehicle Exclusion is Enforceable.**

The Pennsylvania Supreme Court examined the enforceability of the household vehicle exclusion in Gallagher v. GEICO Indemnity Co., 650 Pa. 600, 201 A.3d 131 (2019).  The insurance policy at issue in Gallagher, as in the case before this Court, contained a household vehicle exclusion.  The court in Gallagher concluded that the household vehicle exclusion in Gallagher's policy violated the MVFRL because it acted "as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form."  Id. at 138. Rather, Gallagher "decided to purchase stacked UM/UIM coverage under both of his policies, and he paid [the insurance company] premiums commensurate with that decision."  Id.

11

The Pennsylvania Supreme Court "reject[s] the view that household vehicle exclusions are *ipso facto* unenforceable." Mione, 289 A.3d at 531. Gallagher "simply held that a household vehicle exclusion cannot conflict with Section 1738 by purporting to take away coverage that the law says is mandatory unless waived using a specific form." Id.; see also Donovan, 256 A.3d at 1160 (finding that the household vehicle exclusion cannot be enforced to waive inter-policy stacking absent a valid waiver of inter-policy stacking). Therefore, "[i]n cases where the exclusion does not interfere with the insured's ability to stack UM/UIM coverage, *Gallagher's de facto* waiver rationale is not applicable." Mione, 289 A.3d at 531.

The household vehicle exclusion is enforceable here. O'Boyle was operating his Jeep Wrangler, a household vehicle not listed under the Progressive motorcycle policy, at the time of the accident. The household vehicle exclusion does not interfere with Plaintiffs' ability to stack UIM coverage in this case. Unlike Gallagher, O'Boyle signed a valid stacking waiver form that complies with the language requirements of Section 1738. He received reduced premiums as a result of that waiver. As such, the household vehicle exclusion does not function as a *de facto* waiver under the facts of this case and is enforceable.

## VI. CONCLUSION

Since Plaintiffs knowingly waived inter-policy stacking and the household vehicle exclusion is enforceable, Defendant's Motion for Summary Judgment is granted. An appropriate order follows.

O:\CIVIL 22\22-4948 O'Boyle et al v. Progressive Preferred Ins Co\22.cv.4948 MSJ Memorandum.docx